169 N.J. Super. 460 (1979)
404 A.2d 1274
EVESHAM TOWNSHIP ZONING BOARD OF ADJUSTMENT AND WILBERT D. ABELE, PLAINTIFFS,
v.
EVESHAM TOWNSHIP COUNCIL, SAMUEL RUGGIERIO, EDITH RUGGIERIO, AND WILLIAM RUGGIERIO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 15, 1979.
*463 Mr. Peter R. Thorndike for plaintiff Evesham Township Zoning Board of Adjustment (Messrs. Ryan and Thorndike, attorneys).
Mr, John E. Harrington for intervenor-plaintiff Abele (Messrs. Hartman, Schlesinger, Schlosser & Faxon, attorneys).
Mr. George Botcheos for defendants Ruggierio (Messrs. Laskin & Botcheos, attorneys).
Mr. Thomas Norman for defendant Evesham Township Council.
HAINES, J.S.C.
Defendants Samuel, Edith and William Ruggierio are the purchasers of a building in Evesham Township situate within a district zoned exclusively for residential use. Desiring to use the property for office purposes, they applied to the township zoning board of adjustment for a (d) variance. After a public hearing the application was denied. Defendants then pursued their statutory right to appeal from this decision to the governing body of the township. See N.J.S.A. 40:55D-17. Defendant Evesham Township Council, after reviewing the record made below, reversed the board's decision and granted the requested variance. Subsequently, the board instituted this prerogative writ suit alleging that the council's action was arbitrary, capricious and a usurpation of the authority entrusted exclusively to the board by the Municipal Land Use Law.
*464 Motions were made to dismiss the action on the ground that the board of adjustment had no standing. Before these motions were decided the board, apparently by reason of a change in its membership, decided to dismiss the proceedings. A stipulation of dismissal was executed by all parties, but shortly before it was filed Wilbert D. Abele, a member of the board of adjustment, filed an application to intervene as a plaintiff in the proceeding. This application was granted. Leave to appeal that decision was sought from the Appellate Division of this court and denied. Meanwhile, the board of adjustment was dismissed as a party and the standing question became moot.
Cross-motions for summary judgment have been filed, supported by the records of the hearings held below by the board of adjustment and the township council. This matter must be decided on the record below, Kramer v. Sea Girt, 45 N.J. 268, 289 (1965), regardless of the motions for summary judgment. There can be no dispute as to the facts: they are contained in the record before me. Under the circumstances, the matter is ripe for summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954).
The Municipal Land Use Law empowers a board of adjustment to "[g]rant a variance to allow a structure or use in a district restricted against such structure or use in particular cases and for special reasons," N.J.S.A. 40:55D-70 (d), unless the grant of such a variance would do substantial detriment to the public good or substantially impair the intent and purpose of the municipality's zoning scheme. N.J.S.A. 40:55D-17(a) provides any "interested party" with an appeal as of right to the governing body from any grant of a (d) variance. The governing body, after according all parties an opportunity to present oral and written argument, is required to decide the appeal based exclusively on the record made before the board of adjustment. Additionally, and only if so authorized by ordinance, "any other final decision of a board of adjustment or planning board on any *465 other class of applications for development" may be appealed in a like manner to the governing body.
At issue in this case is the denial of a (d) variance by the board of adjustment, followed by a reversal thereof on an appeal to the township council. The appeal was authorized by ordinance, as permitted in the enabling act. Plaintiff contends that the action of the council should be reversed. Consideration of that issue requires a determination of the standard of review to be employed by a governing body in deciding an appeal from the board of adjustment. That standard is not clear from the language of the Municipal Land Use Law; it has not been fixed by any decision of our courts. In this regard, the search is for legislative intent. New Jersey Pharmaceutical Ass'n v. Furman, 33 N.J. 121 (1960). Plaintiff argues that the council may modify or reverse an action by the board of adjustment only when it finds that action to have been arbitrary and unreasonable.
Since the statute does not expressly set forth the standard of review, the township suggests that the applicable standard should be that which was employed by governing bodies in hearing appeals under the old act, N.J.S.A. 40:55-1.19, which granted any person aggrieved by the action of a planning board a right of appeal to the governing body. The latter, upon notice to the parties, conducted a hearing at which all were given an opportunity to be heard. Significantly, this hearing was not restricted to the record made below; the introduction of additional evidence was permitted. See Hamlin v. Matasazzo, 120 N.J. Super. 164, 169-70 (Law Div. 1975). Thus, although the final determination of a planning board triggered a right to appeal, the governing body did not sit as an appellate tribunal; instead, it afforded the aggrieved party a hearing de novo. Here, to the contrary, the aggrieved party is afforded a hearing only on the record below. The suggestion of the township must be rejected; the standard used under the old statute is not apropos.
*466 In the alternative, the township has argued that the standard of review previously employed by the governing body in evaluating a "recommendation" from the board of adjustment regarding a (d) variance application still obtains under the present appellate format. Under the former statute the board of adjustment was permitted only to recommend approval of such variances to the local governing body. This recommendation was supported by the record of the board hearing, a statement of the basic facts as found by the board and the board's ultimate conclusions. See Rogoff v. Tufariello, 106 N.J. Super. 303, 308-309 (App. Div. 1969) certif. den. 54 N.J. 583 (1969). In deciding whether to accept or reject this recommendation, the governing body was restricted to a consideration of the record made below and bound by the findings of the board with regard to the basic facts. See Tomko v. Vissers, 21 N.J. 226, 236 (1956); Rogoff v. Tufariello, supra. However, the recommendation could be rejected if the governing body could reasonably draw different ultimate factual conclusions from the basic facts as found by the board of adjustment. See Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64, 75-76 (1952); Rogoff v. Tufariello, supra.
The Supreme Court justified this bifurcated standard of review in the Monmouth Lumber case on the ground that "the power to make new conclusions or to draw new inferences from these facts is incidental and essential to the power vested in the governing body to disapprove the recommendation." Monmouth Lumber Co. v. Ocean Tp., supra at 75-76. In other words, this standard of review was a product of the power delegated by the statute to the governing body. Under the present statute the governing body no longer acts as the final approving authority on recommendations from the board of adjustment but, to the contrary, acts as an appellate body reviewing the final decisions made by boards of adjustment. Hence, the statutory scheme that gave rise to the prior standard of review has been significantly altered by the Municipal Land Use Law.
*467 The appellate process established by the new act is identical with respect to planning boards and boards of adjustment. Nothing in this statutory scheme calls for the creation of a different standard of review for board of adjustment as opposed to planning board decisions. Furthermore, the restructuring of the review process evidences a legislative intention to increase the decision-making powers of both boards.
For example, the new law eliminates "weak" planning boards, i.e., ones required by ordinance to submit all subdivision decisions to governing bodies for final action. N.J.S.A. 40:55-1.14, 1.15, 1.17 and 1.18; see Kotlarich v. Ramsey, 51 N.J. Super. 520 (App. Div. 1958). Now, all planning boards are "strong," i.e., all their actions are final without governing body action. Moreover, the legislature, apparently in recognition of the responsibilities of planning boards, Hamlin v. Matasazzo, supra, did away with the former de novo appeal from planning board decisions authorized by N.J.S.A. 40:55-1.19 and replaced it with a review based upon the record made below. N.J.S.A. 40:55D-17 (b). These changes make it clear that the Legislature intended to increase the power of planning boards by confining the role of the governing body to that of review.
Similarly, although boards of adjustment could only recommend that favorable action be taken by the governing body on a (d) variance application under the old law, they now make final decisions on all variance applications. While all of their decisions are appealable to the governing body when, as here, the governing body authorizes such appeals by ordinance, it is pertinent to recall that under the former statute decisions of a board of adjustment that were final could be appealed only to the courts. As to the courts, the standard of review was set forth in Schmidt v. Newark, 9 N.J. 405 (1952):
The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to the matters coming within its *468 cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function. [at 423]
The parallel between the position of the governing body in the new review process and the position of the judiciary in the former review process is obvious. This parallel is made more striking by the fact that the new act, in carefully chosen, express language, restricts the governing body's appellate proceeding to a consideration of the record below, whether the appeal is from a board of adjustment or a planning board. Its "hearing" is described as a "meeting to review the record below," at which time the parties are permitted to "submit oral and written argument on the record." N.J.S.A. 40:55D-17(b). This parallel strongly invites the conclusion that the scope of appellate review for governing bodies in land use matters as well as zoning matters is the same as that followed by our courts. This interpretation is reinforced by N.J.S.A. 40:55D-17(h) which provides that the act is not to be construed as restricting the "right of any party to obtain review by any court of competent jurisdiction," thus indicating that both court and governing body are engaged in a "review" process in these matters. By contrast, N.J.S.A. 40:55-1.19 used the word "review" when referring to courts and not when referring to governing bodies. It follows that the scope of review should be the same for both.
An opposite conclusion leads to an incongruous result. In those municipalities not adopting ordinances authorizing appeals of all decisions of planning boards and boards of adjustment to their governing bodies, the initial appeal, except when a (d) variance is issued, will be to the courts, which apply the arbitrary standard when reviewing these appeals. In municipalities adopting such ordinances, the *469 initial appeal will be to the governing body which, absent this determination, would apply a different standard of review than that used by the courts. Thus, the degree of finality accorded planning board and board of adjustment decisions would vary from one municipality to another depending upon the option chosen by its governing body. This divergence would not be in the public interest and, therefore, cannot have been intended by the Legislature.
The legislative history of the Municipal Land Use Law, a necessary aid in construing the statute, New Jersey Pharmaceutical Ass'n v. Furman, supra, provides support for this conclusion. The Sponsor's Statement lists, as one of the highlights of the legislation: "Removing the governing body from the necessity to participate in granting use variances and subdivisions and giving it appellate power to pass upon, when requested." (Emphasis supplied.) The Statement of the Senate County and Municipal Government Committee sets forth the following as among the primary overall objectives of the statute:

* * * * * * * *
to provide (a) a clearer delineation of the respective responsibilities of municipal bodies or officials and developers in the regulatory process and (b) a more precise timetable therefor;

* * * * * * * *
to eliminate some of the procedural confusion resulting from existing jurisdictional overlaps, especially relating to the exercise of concurrent jurisdiction;

* * * * * * * *
to clarify several ambiguities in the present law, relating to substantive and procedural law, by incorporating pertinent judicials thereon. [Emphasis supplied]
These statements demonstrate an intention on the Legislature's part to have boards of adjustment and planning boards on the one hand, and governing bodies on the other hand, operate in distinct spheres. That is to say, these statements indicate that the review power of the governing body is not intended to duplicate the power granted these boards in the first instance.
*470 One of the principal changes in the old law according to the Statement is that the new act "broadens the review powers of the governing body," referring to N.J.S.A. 40:55D-17. The broadened powers consist of the expanded authority of the governing body to modify final decisions of planning boards and boards of adjustment and to provide by ordinance for appeals of all final decisions of those boards. As noted above, under the old law the only board of adjustment decisions governing bodies considered were favorable recommendations of (d) variances. In addition, there were no appeals from planning board decisions granting site plan approval, as now permitted. Arlington Ass'n v. Parsippany-Troy Hills, 118 N.J. Super. 418 (App. Div. 1972); Allen v. Evesham Planning Bd., 137 N.J. Super. 359, 362 (App. Div. 1975). However, it does not follow from this comment that there was any intention to provide governing bodies with the de novo powers vested in boards of adjustment.
Although the use of the word "modify" implies discretion, it seems obvious that it is not intended to be an unfettered discretion. N.J.S.A. 40:55D-17(b) expressly restricts the governing body to a consideration of the record below in deciding an appeal. Consequently, any modification of the decision would have to be based upon the facts in the record. What must be decided, however, is when and how the governing body may exercise the power to modify. Unless some constraint is placed upon this power, the governing body could assume the role of the board of adjustment, devising entirely new conclusions in total disregard of the expertise of the board. The rule to be established here will determine when the governing body may modify. The question of "how" cannot be addressed on the facts before the court. Here, the governing body did not modify, it simply reversed the decision of the board. A modification is a change of lesser dimension. The nature of the changes permissible under the statute will have to be determined on a case-by-case basis in circumstances where true modifications have been attempted.
*471 Finally, the difference between the review powers granted to the boards of adjustment under the new act and those granted to governing bodies is also instructive. N.J.S.A. 40:55D-17(d) merely states that
The governing body may reverse, remand or affirm, wholly or in part, or may modify the final decision * * * of the planning board or board of adjustment as the case may be.
In contrast, N.J.S.A. 40:55D-74, which permits appeals to the board of adjustment from decisions of administrative officers, expressly provides for the broadest possible scope of review:
The board of adjustment may reverse, or affirm, wholly or in part, or may modify the action, order, requirement, decision, interpretation or determination appealed from and to that end have all the powers of the administrative officer from whom the appeal is taken.
This comparison supports the conclusion that governing bodies have not been given the broad appellate authority of boards of adjustment. Had the Legislature intended otherwise, it would have said that governing bodies "shall have all the powers of the board of adjustment from which the appeal has been taken."
Consequently, I conclude that under the new legislation governing bodies may act to "reverse, remand or affirm, wholly or in part, or may modify the final decision of the * * * board of adjustment * * *," as permitted by N.J.S.A. 40:55D-17(d), only upon a finding that the decision of the board was so arbitrary or capricious that it amounted to an abuse of discretion, the same standard of review applied by the courts. Any other approach would weaken the powers given to boards of adjustment, contribute to, rather than lessen, the jurisdictional overlap between various municipal bodies and deny board of adjustment actions the finality clearly intended by the new legislation, which promotes the long-recognized role for boards of adjustment, namely, that *472 they are "to provide expert discretion and judgment to matters coming within [their] cognizance * * *." Rogoff v. Tufiariello, supra.
Under that standard the governing body here was required to determine whether the action of the board of adjustment was so arbitrary and capricious as to amount to an abuse of discretion, before it could reverse. The same standard applies to my consideration of the action of the governing body, i.e., I may not reverse its action unless I find that it violated the same standard. Ward v. Scott, 16 N.J. 16, 20, 21, 23 (1954).
Defendants' (d) variance application sought permission to use an old residence for professional offices. The property was situated in a residential zone which did not permit the proposed use. The special reasons advanced in support of the application were: (1) the cost of repairing and restoring the property to a useable and attractive condition is so substantial as to make it unlikely that such repairs would be undertaken by a residential use; (2) the acute shortage of professional office space in Evesham Township, and (3) the shortage of attorneys in the township. N.J.S.A. 40:55D-70 (d) empowers the board of adjustment to grant such a variance "in particular cases and for special reasons," provided that the use authorized will not "substantially impair the intent and purpose of the zone plan or zoning ordinance" nor result in "substantial detriment to the public good". In light of what follows it is important to emphasize the dual nature of the inquiry undertaken when assessing (d) variance applications.
The board concluded that the requested relief would impair the intent and purpose of the zone plan since
* * * variance approval would result in an incursion of a professional law office use 330 feet into an R-1 residential zone on premises surrounded on all sides by R-1 zoned property. Further, to permit said use would effectively isolate Lot 10-C, Block 26 from residentially zoned ground and decrease the possibility for the development of said lot consistent with the present zoning.
*473 The board disagreed with the contention that the cost of repairs would prevent a future use consistent with residential zoning. It did not consider that the scarcity of professional office space in the township was a reason for a variance; it considered this a matter for zoning ordinance amendment. Consequently, it denied the variance by vote of 5 to 1.
Defendants then appealed the matter to the township council. The hearing was held and arguments on both sides considered. The council then reviewed the record and adopted a resolution reversing the decision of the board of adjustment, finding, among other things, as follows:
Under the circumstances surrounding the specific facts of this appeal, the restoration of such structure and resulting beneficial impact in the immediate neighborhood constitutes a "special reason" to justify a use variance.

* * *
This body recognizes that the proposed use is not consistent with residential uses immediately adjacent to the subject parcel. However, Council finds that the impact of the proposed use will not adversely affect the surrounding residential uses and the immediate neighborhood will benefit and will not be substantially depreciated or impaired by the presence of the proposed professional use.
In support of council's finding, defendants assert that the board of adjustment reached its conclusion about the special reason requirement after having received erroneous legal advice from its counsel. The alleged erroneous advice was to the effect that rehabilitation of the residential structure for office use would not satisfy this requirement. Kramer v. Sea Girt, supra, is cited as support for the argument. In essence, defendants appear to be arguing that the board of adjustment incorrectly applied the law to the facts. Although this court questions defendants' conception of the law, there is no reason to decide that question here.
As has already been determined, the township council could not modify or reverse a decision of the board of adjustment unless it was found that the board had acted arbitrarily and unreasonably. With regard to the latter finding, *474 the board of adjustment found that the requested variance would impair the intent and purpose of the township's zoning plan. The township council did not make any determination that this conclusion was arbitrary. Not only did it fail to so find, but if it had done so, its decision would have been erroneous because it would have constituted an abuse of discretion on its part. The finding of the board of adjustment was amply supported by the record and was by no means arbitrary. Consequently, even if the township council's understanding of the law is the correct one, so that a special reason was available, this would satisfy only one aspect of the two-pronged requirement for granting (d) variances the second aspect, that the "variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance," N.J.S.A. 40:55D-70, would still not be satisfied.
The decision of the township council must be reversed. Costs are allowed to plaintiff.