203 N.J. Super. 598 (1985)
497 A.2d 596
ARTHUR ILLES AND ARLENE ILLES, HIS WIFE; JAMES L. CARTER AND MARY ANN CARTER, HIS WIFE; VICTORIA JERRY; DAVID L. GUSICK AND ELLEN M. GUSICK, HIS WIFE; GEORGE TOTH AND IRENE TOTH, HIS WIFE; GLADYS CHINCHAR; AMERIO BIANCHI AND EMILIA BIANCHI, HIS WIFE; AND JENNIE ILLES, PLAINTIFFS,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF EDISON; TOWNSHIP COUNCIL FOR THE TOWNSHIP OF EDISON, ANTHONY YELENCSICS, MAYOR; TOWNSHIP OF EDISON; LOUIS CYKTOR, JR.; AND WICK BUILDERS, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided May 9, 1985.
*600 Gerald A. DelTufo for plaintiffs.
Stephen E. Barcan for defendants Louis Cyktor, Jr. and Wick Builders (Wilentz, Goldman & Spitzer, attorneys).
Peter A. DeSarno for defendants Township of Edison, Mayor and Council.
Patrick W. Foley for defendant Zoning Board of Adjustment of the Township of Edison.
CONLEY, J.S.C.
This is an action in lieu of prerogative writs challenging the affirmance by the Mayor and Township Council of Edison of bulk and use variances granted by the zoning board of adjustment. Plaintiffs are residents/objectors who own homes near the property in question. Defendants Louis Cyktor, Jr. and Wick Builders (hereinafter referred to as defendants) applied to the board of adjustment for a use variance, several bulk variances, and site-plan approval to construct a three-story office building on the property. The property, consisting of 1.43 acres, is located in a RB (residential) zone. The property is "L" shaped and has frontage on Amboy Avenue, Coral Street and Gross Avenue. Its east and west borders are adjacent to *601 residential properties. With respect to its present use, there was a home located on the large leg portion of the "L" (Block 730, Lot 22-A) but that became vacant and was finally demolished in the 1960's. Lot 22-A has remained vacant since. The smaller leg of the "L" (Block 730, Lots 1-A, 2, 3, 4, 5 & 6), presently has a residential structure, about which there is little testimony in the record except that it is attractive and that it will be demolished to make room for the office building.
The immediate block within which the property is situated is bounded on the north by Amboy Avenue, on the west by Coral Street, on the south by Gross Avenue, and on the east by Burchard and Norman Streets. It consists entirely of residences, with the exception of a dance studio and a firehouse. The surrounding area has mixed uses, with residences on the opposite side of Amboy Avenue, mixed residential and light industry to the east and light industry to the west and south. The New Jersey Turnpike is a block away to the west.
The matter is presently before the court on a motion for summary judgment filed by defendants and a cross-motion for summary judgment filed by plaintiffs. There are no disputes of fact and the matter is ripe for summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67 (1954). Although the cross-motion filed on behalf of plaintiffs raises several issues, one of those issues is dispositive of the present proceeding. It involves the proper scope of review of the mayor and township council.[1] It is defendants' contention that the 1984 amendments *602 *603 to N.J.S.A. 40:55D-17(a) and (d) overruled the holding in Evesham Town Board of Adjustment v. Evesham Township, 86 N.J. 295 (1981) concerning a governing body's scope of review on appeals from grants of variances by boards of adjustments.
In Evesham, the Supreme Court held that, as it was then worded, N.J.S.A., 40:55D-17 granted to governing bodies the authority to conduct a de novo review of an appealed board of adjustment's determination. The Legislature, the court stated, "intended that where the action of a Board of Adjustment is challenged on appeal, the governing body is to have authority to make a de novo review of the record established before the Board and reach its own decision on the matter subject only to the requirement that its findings and conclusions are supported by the record." Id. at 301. The fact that the then-existing legislation provided that the governing body's determination be based upon the record presented to the board of adjustment was not considered to be inconsistent with the concept of a de novo review. Ibid; Kessler v. Bowker, 174 N.J. Super. 478 (App.Div. 1979), certif. den. 85 N.J. 99 (1980). "It merely restricts the presentation of evidence to the hearing before the Board of Adjustment. Where the action of a Board of Adjustment is challenged, however, the governing body which is *604 directly responsible to the citizenry should have the right to apply its own expertise and knowledge of the community and make the final evaluation based on the record created below." 86 N.J. at 301.
At the time Evesham was decided, N.J.S.A. 40:55D-17(a), which governs the types of actions that may be appealed to municipal governing bodies, provided in part that:
[a]ny interested party desiring to appeal the decision of a municipal agency shall appeal to the governing body (1) any final decision of a board of adjustment approving an application for development pursuant to subsection 57d of this act [N.J.S.A. 40:55D-70], and (2) if so permitted by ordinance, any other final decision of a board of adjustment or planning board on any class of applications for development....
Subsection (d), setting forth the actions a governing body may take on an appeal, provided:
The governing body may reverse, remand or affirm, wholly or in part or may modify the final decision of the planning board or board of adjustment, as the case may be.
Pursuant to subsection (b), the review was to be based upon the record below and oral and written argument presented to the governing body.
These particular provisions were part of an extensive revision of the Municipal Land Use Law enacted in 1975. One of the purposes of the amendments was to strengthen the role of planning boards and boards of adjustment in land use development. For example, former "weak" planning boards, i.e., ones required by ordinance to submit all subdivision decisions to the governing body, were eliminated. Planning board decisions were made final without governing body action. Additionally, where previously boards of adjustment could only recommend to the governing body the grant of a use variance, the 1975 amendments empowered the boards to grant such a variance. See N.J.S.A. 40:55D-70.
As part of the revision of the land use law, the review jurisdiction of governing bodies was broadened. Where for instance, the only reviewable actions by boards of adjustments were recommendations for use variances, N.J.S.A. 40:55D-17(a) *605 allowed for review of all final actions of boards of adjustments. It also allowed for appeals from all final actions by the planning boards. Additionally, governing bodies were given the power not only to reverse, remand or affirm, wholly or in part, but also to "modify" the final decisions of planning boards and boards of adjustment. It was this breadth of authority which prompted the law division judge in Evesham to state "unless some constraint is placed upon this power, the governing body could assume the role of the board of adjustment, devising entirely new conclusions in total disregard of the expertise of the board." 169 N.J. Super. 460, 470. The constraint that that court conceived to be appropriate was the application of the arbitrary, capricious or unreasonable scope of review limitation on appeals to the governing body. This, the Supreme Court found to be an unwarranted construction of the law.
The history of the 1984 amendments to section 17(a) and (d) evidences a concern on the part of the Legislature with the extensive appeal jurisdiction conferred upon governing bodies by the 1975 amendments and highlighted by the decisions in Evesham. Thus, the amendments to subsection (a) delete from a governing body's appeal jurisdiction all but grants of "special reason" or "use" variances. There is no jurisdiction over appeals from any planning board actions. As amended, subsection (a) provides:
Any interested party may appeal to the governing body any final decision of a board of adjustment approving an application for development pursuant to 57d [N.J.S.A. 40:55D-70] of this act if so permitted by ordinance....
Subsection (d) was also amended. As amended, it provides:
The governing body may reverse, remand or affirm with or without the imposition of condition the final decision of the board of adjustment approving a variance pursuant to subsection (d) of section 57 of P.L. 1975, c. 291 (C.40:55D-70). The review shall be made on the record before the board of adjustment.
This amendment replaces "affirms, wholly or in part" with "affirm with or without conditions," and deletes the reference to "modify."
It is this amendment to subsection (d) that defendants argue overrules Evesham. They argue that the legislative history *606 governing subsection (d) supports this position. Defendants have submitted for consideration Stuart R. Koenig, "Amendments to the Municipal Land Use Law," New Jersey Municipalities, June 1984 and Fred G. Stickel, III, "The Last Word on Governing Body Appeals," 4 New Jersey State Bar Association Land Use Law Section, No. 1, June 1984, at 4, 11. The authors of these articles were members of the league of municipalities land use law drafting committee. In was the committee which initiated the 1984 amendments. In their articles, both authors opine that one of the objectives of the drafting committee in proposing the amendments to N.J.S.A. 40:55D-17 was to provide for an arbitrary, capricious and unreasonable scope of review by governing bodies.
Assembly Bill 2107, the initial amendment drafted by the committee in 1983, did accomplish this objective. As proposed, subsection (d) provided:
On the appeal, the governing body shall sit in quasijudicial (appellate) capacity. The governing body may reverse or remand the decision of the planning board or the board of adjustment only upon a finding that the action taken was arbitrary, capricious or unreasonable, or upon a finding that the action depended on an interpretation of law that was legally erroneous.
The statement submitted in connection with this proposed language specifically provided that the change to subsection (d) was to:
... Clarify that the standard for governing body review of an appeal is that of an appellate court rather than an independent policy review. These amendments will preserve the governing body appeal for approvals of the most drastic departure from municipal development regulations (if this is agreeable to the governing body and the objector) with a standard of review that is less burdensome on the governing body and more respectful of the administrative expertise of the board than the holding in Evesham Bd. of Adj. v. Evesham Tp., 86 N.J. 295 (1981).
Following the introduction of the bill in the Assembly, it was considered by the Assembly Municipal Government Committee and that committee made certain changes. Assembly Bill 2107 with assembly committee amendments, dated June 16, 1983, deleted the proposed amendment to subsection (d), and inserted in lieu of that amendment the following:

*607 The governing body may reverse, remand or affirm with or without the imposition of conditions the final decision of the board of adjustment approving a variance pursuant to subsection d. of section 57 of P.L. 1975, c. 291 (C.40:55D-70). The review shall be made on the record made before the board of adjustment.
The statement issued by the assembly committee as explanation for this particular amendment provided in part that the purpose of the amendment was to:
... clarify that the standard governing body review of an appeal is that of an appellate court. These amendments will preserve the governing body appeal for approval of the most drastic departures from municipal development regulations (if this is agreeable to the governing body and the objector).
Thus, the league of municipalities' drafting committee's proposed amendment to subsection (d) was not retained. In particular, the language characterizing the governing body's review as appellate and limited to an arbitrary, capricious or unreasonable standard was deleted. In addition, the governing body's power to reverse or remand was extended to encompass the power to affirm with or without the imposition of conditions. The assembly committee's explanation of these changes, while retaining the reference to the governing body's acting as an appellate court, deleted the reference to Evesham.
As finally enacted, Assembly Bill 2107 (resubmitted in 1984 and enacted as Assembly Bill 1169) retained the assembly committee version of subsection (d). Further, the official statement governing the enacted amendment deleted the reference to the governing body's being "an appellate court" and simply provides that the amendment to subsection (d) is to "clarify the governing body's powers over an appealed decision...."
It is, of course, the responsibility of the court to construe a statute consistent with what the Legislature intended, Dacunzo v. Edgye, 19 N.J. 443, 451 (1955). A sponsor's statement may be considered as an aid in construing legislative intent. Deaney v. Linen Thread Co., 19 N.J. 578, 584-585 (1955). However, where as here, proposed legislation is changed during the legislature process, far less deference is accorded the initial statement. See State v. State Supervisory *608 Employees Association, 78 N.J. 54, 70 (1978); Gabin v. Skyline Cabana Club, 54 N.J. 550, 556 (1969); cf. Perez v. Pantasote, Inc., 95 N.J. 105, 114 (1984). Moreover, the deletion during the legislative process of express language effecting a particular change in the law, has been considered an indication of legislative intent not to adopt such a change. See, for example, Falcone v. DeFuria, 199 N.J. Super. 554 (App.Div. 1985). See also Lemke v. Bailey, 41 N.J. 295, 302 (1963); Fox v. Bd. of Ed. of W. Milford Tp., 93 N.J. Super. 544, 562 (Law Div. 1967).
Caution, of course, must be taken in using the action of the Legislature on proposed amendments as an interpretive guide. Garden State Farms, Inc. v. Mayor Louis Bay, II, 77 N.J. 439, 453 (1978); 2A Sutherland, Statutory Construction (1973 ed.), § 48.18 at 225. And, while it has often been stated that the failure of the Legislature to change legislation following judicial construction may be considered as an acquiesence in such construction, such inaction has also been characterized as a "weak reed upon which to lean." White v. Township of North Bergen, 77 N.J. 538, 556 (1978).
Here there was legislative action. The action, however, consisted of a rejection of language that would plainly overrule the judicial construction. More importantly, the actual language of subsection (d) that was enacted, though not precisely the same as the prior language, nonetheless continues to confer broad power upon governing bodies in the review of appeals under subsection (a). The governing body may reverse, remand, and affirm "with or without conditions." There are no limitations imposed upon the type of conditions that a governing body might fashion and an affirmance with conditions is a modification. Since the Legislature has given governing bodies the right to impose conditions if deemed appropriate, it must have intended that they be able to do so properly. That implies the ability to conduct an independent or de novo review of the record. It is also of some consideration that the language *609 "reverse, remand and affirm with or without conditions" is more expansive than the power simply to "affirm or reverse" which had been available to governing bodies on appeals formerly authorized by N.J.S.A. 40:55-1.19 (repealed by L. 1975, c. 291, § 80). Yet the scope of review under that less expansive language had been construed in such a way as to give governing bodies the type of review that is fully consistent with a de novo review, albeit at the time there was no limitation that it be on the record below. See Kotlarich v. Ramsey, 51 N.J. Super. 520, 540-541 (App.Div. 1958); Hamlin v. Matarazzo, 120 N.J. Super. 164, 175 (Law Div. 1972). See also Reid v. Hazlet Twp., 198 N.J. Super. 229 (App.Div. 1985) (decided after the 1984 amendments and in dicta construing the governing body's review of variance approvals as de novo on the record).
It is, of course, often stated that when the Legislature has deleted a word or phrase that is a material change in language, courts should infer a purposeful alteration in substance. Cold Indian Springs Corp. v. Tp. of Ocean, 154 N.J. Super. 75, 95 (Law Div. 1977), aff'd 161 N.J. Super. 586 (App.Div. 1978), aff'd 81 N.J. 502 (1980). The deletion of the word "modify," argue defendants, is such a material change. As noted above, however, to affirm with or without conditions implies the power to modify. With the removal of all but approvals of use variances from the governing bodies' appeal jurisdiction accomplished by the amendment to subsection (a), the Legislature could well have reached the conclusion that the power to "modify" would be superfluous.
It is, therefore, the holding of this court that while removing from the appeal jurisdiction of the governing bodies all but grants of "special reason" or "use" variances by boards of adjustment and thereby reinforcing the strength of planning boards and boards of adjustments, the Legislature has continued to empower those governing bodies, who chose by ordinance to review such actions, the authority to conduct a de novo review on the record below. It has, thereby, continued to *610 allow governing bodies, who are of course "responsible to the citizenry," the right to "apply its own expertise and knowledge of the community and make the final evaluation based on the record created below" (Evesham, supra, 86 N.J. at 301 on those matters that clearly may impact directly upon critical zoning ordinance regulations.
For the foregoing reasons, defendants' motion for summary judgment is denied, plaintiffs' cross-motion is granted, and the matter is remanded to the Edison Township governing body for a reconsideration of the appeal consistent with this opinion. The complaint is dismissed and the court does not retain jurisdiction. Counsel for plaintiffs should submit an appropriate order.
NOTES
[1] That this issue is critical in the context of this case is clear. When plaintiffs' attorney presented his oral argument to the governing body and urged the members to conduct a de novo review of the zoning board's determination, the following colloquy occurred between the township attorney and plaintiffs' attorney and appears in the minutes of the hearing:

Attorney for governing body:
but this Council always took the position that it wasn't de novo, it was on the record strictly, and I might add that the recent Amendment to the Statute bears that out, Legislature in its intent always meant to be merely a review of the record below, and....
Attorney for plaintiffs:
The record de novo is below, but it doesn't mean that they just have to look at the Board, that they have no power, they have the power to consider that evidence over again in light of the arguments that are being made here and in light of the arguments that were submitted.
Attorney for governing body:
They're very fine distinctions and you are not precluded from raising that later if that happens to be the case....
Defendants' attorney told the mayor and council that the question before them was whether the Zoning Board was arbitrary, capricious or unreasonable meaning "was what they did crazy," "was there nothing in the record to support what they did?" When the matter was thereafter brought up for vote, the township attorney again urged the council to employ the arbitrary, capricious or unreasonable scope of review. The vote was four to three in casting their votes. Two of the council members indicated that they were voting "yes" because they could not determine that the board of adjustment's action was either arbitrary, capricious or unreasonable.
A review of the record below, moreover, suggests that the governing body's determination might have been different had its members applied a de novo review. With respect to the bulk variances sought, the undue hardship supporting such variances was alleged to be the irregular shape of the particular lot in question. Yet the testimony did not relate the shape of the property to the variances; rather, the thrust of the testimony was simply that the proposed bulk specifications (height, area coverage, parking space size, sign area) struck a reasonable balance between residential and light industry requirements. Whether that is sufficient to establish undue hardship as defined in Chirichello v. Zoning Board of Adjustment Monmouth Beach, 78 N.J. 544 (1979) is debatable. With respect to the special reason for the use variance, defendants' contention was that the general neighborhood was of mixed uses, that a professional building would be a good transitional use, and that the proposed use would encourage the most appropriate use and development of the property. One of defendant's experts, Lynch, admitted that "residential uses can be placed on the lot, physically," but opined that the "property should not be expected to be developed for residential purposes." The real estate expert, Sannario, testified that the proposed office building is a good transitional use and that it is impractical to build residences on the property. This was reflected, he stated, by the lack of residential development for the past 20 years on the particular lot. On cross-examination, however, Sannario indicated that he was unaware that at least two new homes were built in the last five years in the immediate block. And, there was no testimony offered by the applicants concerning the history of the particular property in question except that part of it (Lot 22A) had been vacant for the last 20 years. Other than to indicate it was to be demolished, no mention was made of the dwelling presently existing on the other portion of the property (Lots 1-A, 2, 3, 4, 5 & 6). Finally, although the neighborhood might be considered of mixed uses, the immediate block is essentially all residential. As the Supreme Court noted in Cerdel Construction Co., Inc. v. East Hanover Township, 86 N.J. 303 (1981):
It can always be said that the border area of a zone is affected by adjoining uses and that such an area is particularly adaptable to uses pursuant to a variance. However, the lines have to be drawn somewhere if a zone plan is to have any real purpose. The errosion of border areas through variances is destructive of sound zoning and cannot be allowed except where special circumstances beyond those ordinarily associated with zone borders are shown. Plaintiff's property can be put to its zoned use. It already has a dwelling on its northern portion. Plaintiff's own expert witness testified at the Board's hearing that the subject property could feasibly be used for residential purposes. [at 306-307].
The sufficiency of the special reason evidence for the nonresidential development of the border area property here is debatable.