COMMITTEE FOR A RICKEL ALTERNATIVE AND LINDEN MERCHANTS ASSOCIATION, PLAINTIFFS–RESPONDENTS, v. CITY OF LINDEN, DEFENDANT, AND SUPERMARKETS GENERAL CORPORATION, DEFENDANT–APPELLANT.

Argued September 15, 1987—Decided July 25, 1988.

*Charles N. Winetsky* argued the cause for appellant (*Winetsky and Winetsky,* attorneys).

*Jerome Krueger,* City Attorney, argued the cause on behalf of City of Linden.

*Robert M. Rich* argued the cause for respondents Committee for a Rickel Alternative, et al. (*Weitzman & Rich,* attorneys).

*Frederick G. Stickel, III,* General Counsel, New Jersey State League of Municipalities and *William M. Cox* submitted a letter brief on behalf of *amici curiae* New Jersey State League of Municipalities and New Jersey Institute of Municipal Attorneys.

The opinion of the Court was delivered by

CLIFFORD, J.

■ We granted certification, 107 *N.J.* 136 (1987), to determine whether under the Municipal Land Use Law, *N.J.S.A.* 40:55D-1 to -112 (MLUL), a tie vote of a municipal governing body affirms or reverses a grant of a use variance by the board of adjustment. We conclude, as did the Appellate Division, that it constitutes a reversal. We therefore affirm the judgment below.

I

The facts are undisputed. Defendant, Supermarkets General Corporation (SGC), applied to the Linden Board of Adjustment for a use variance, pursuant to *N.J.S.A.* 40:55D-70(d), to build a Rickel Home Center in an area zoned for light industrial use. By a five-to-two vote the Board approved the application and subsequently adopted a resolution memorializing that decision.

Plaintiffs, Committee for a Rickel Alternative and Linden Merchants Association, objectors in the proceedings before the Board, took a timely appeal to the Linden City Council, pursuant to *N.J.S.A.* 40:55D-17. On June 18, 1985, the Council reviewed the record made before the Board and heard the arguments of counsel. At the conclusion of the hearing five members of the Council voted to affirm the Board, five voted to reverse, and one abstained because of a conflict of interest. The Council passed a resolution stating that as a result of the tie vote, the Board's decision granting the variance was upheld.

On July 22, 1985, plaintiffs filed a declaratory judgment action against the City and SGC, seeking judgment, *inter alia,*

that as a matter of law SGC's application should be deemed denied because of the tie vote. The City, supported by SGC, moved for summary judgment. The trial court considered plaintiffs' responding papers to be a cross-motion for summary judgment, and entered judgment in defendants' favor dismissing the complaint. *Committee for a Rickel Alternative v. City of Linden,* 211 *N.J.Super.* 79 (Law Div.1986). Citing a number of cases for the proposition that the Board's action was presumptively valid and should not be upset on appeal unless shown to be arbitrary, unreasonable, or capricious, the trial court concluded that plaintiffs bore the burden of proving, before the City Council, that the Board's granting of the variance was improper. *Id.* at 83–84. The court further reasoned that an appeal to a municipal governing body is an appellate proceeding, and "the appellant has the burden of convincing the governing body to reverse, remand or affirm the Board of Adjustment's actions." *Id.* at 84. Inasmuch as plaintiffs did not convince a majority of the Council members to vote to reverse, they failed to meet their burden, and the tie vote resulted in an affirmance of the Board's action. *Ibid.*

The Appellate Division reversed, concluding that the hearing before the Council was a *de novo* review on the record made before the Board. *Committee for a Rickel Alternative v. City of Linden,* 214 *N.J.Super.* 631, 635 (1987) (citing *Evesham Township Zoning Bd. of Adjustment v. Evesham Township Council,* 86 *N.J.* 295, 300 (1981)). The court below therefore rejected the trial court's reasoning that the Council's review was limited to a determination of whether the Board's action was arbitrary, unreasonable, or capricious. *Ibid.* In the Appellate Division's view, the *de novo* nature of the Council proceedings meant that the Board's action was not entitled to a presumption of correctness, *id.* 214 *N.J.Super.* at 638, and that SGC, as an applicant seeking relief from a public body, "had the burden to convince the council that it was entitled to the variance." *Id.* at 636. The Appellate Division therefore held that a tie vote by the governing body results in a reversal of

the Board's action, a result the court deemed consistent with the purposes and provisions of the MLUL. See *id.* at 635–38. The court reversed and remanded the matter to the Law Division for entry of judgment in favor of plaintiffs invalidating the Council's resolution on procedural grounds. The judgment was without prejudice to SGC's right to challenge in another proceeding the merits of the Council's failure to approve the variance. *Id.* at 638–39.

In addition to granting SGC's petition for certification, we granted leave to the New Jersey Institute of Municipal Attorneys and the League of Municipalities to appear as *amici.* Our affirmance of the judgment below is substantially for the reasons stated by the Appellate Division, to which we add the following observations.

## II

This appeal turns on the effect of amendments to the MLUL enacted by *L.* 1984, *c.* 20. Prior to the adoption of those amendments, *N.J.S.A.* 40:55D–17(e) provided that "[t]he affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand or modify any final action of either [the planning board or the board of adjustment.]" *L.*1975, *c.* 291, § 8. Under that provision, then, a tie vote by the governing body would have resulted in an affirmance of the action taken by the Board of Adjustment, a majority vote being necessary only to "reverse, remand or modify" the board's action. As amended by *L.* 1984, *c.* 20, § 6, however, *N.J.S.A.* 40:55D–17(e) now provides that "[t]he affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand, or affirm with or without conditions any final action of the board of adjustment." In contrast to the former language, this section now contains no implication of the result should there be a tie vote by the governing body: a majority vote is now required both to reverse and affirm the board's action.

We recognize a certain anomaly in this section: when read literally, it would appear to construe a tie vote as a sort of non-event, in that neither party has garnered a majority either to affirm or reverse the result below. In our view, such a result is not only unreasonable, it is inconsistent with what we perceive to be the legislature's intent. *See, e.g., Suter v. San Angelo Foundry and Mach. Co.,* 81 *N.J.* 150, 160 (1979).

SGC argues before us that resolution of this case is governed by *N.J.S.A.* 40:55D–17(c), which provides in pertinent part as follows:

The governing body shall conclude a review of the record below not later than 95 days from the date of publication of notice of the decision below * * *. *Failure of the governing body* to hold a hearing and conclude a review of the record below and *to render a decision within such specified period shall constitute a decision affirming the action of the board.* (Emphasis added.)

Focusing on the statutory language highlighted above, SGC contends that the tie vote in this case is tantamount to a failure to render a decision within the specified ninety-five-day period, thereby "constitut[ing] a decision affirming the action of the board." SGC argues that the statute requires something more than a simple vote by the governing body, that it requires a "decision," *i.e.,* an actual and final resolution of the matter. We reject SGC's suggested analysis.

In support of its argument SGC cites our decision in *Lizak v. Faria,* 96 *N.J.* 482 (1984). In that case the Board had orally denied defendants' variance application, but had not reduced that decision to writing. This Court concluded that "the failure of the Board to memorialize its oral denial of the application for a use variance" resulted in an automatic grant of the variance by operation of *N.J.S.A.* 40:55D–10(g) (since amended by *L.* 1984, *c.* 20, § 4). *Id.* at 486. We reasoned that the Board's "failure to reduce a decision to writing was tantamount to municipal inaction." *Id.* at 496 (citing *Gridco, Inc. v. Zoning Bd. of Hillside,* 167 *N.J.Super.* 348 (Law Div.1979)). SGC suggests that much as the Board's failure in *Lizak* to reduce its decision to writing constituted municipal inaction, the Council's

failure in this case to arrive at a conclusive decision constituted inaction resulting in a statutory affirmance. The analogy advanced by SGC is not persuasive, inasmuch as the policy considerations underlying our decision in *Lizak* are inapposite to this appeal. Our holding in *Lizak* was premised in large part on the legislature's consistently "clear * * * direction that the decisions of municipal agencies should be in writing, and should set forth findings of fact and conclusions." *Ibid; see also Gridco, supra,* 167 *N.J.Super.* at 350 ("it is clear that each decision must be in writing * * * [and] shall include findings of fact and conclusions of law based thereon."). In this case the governing body memorialized the result of its vote in a resolution, clearly stating the facts found and conclusions drawn by the respective groups of Council members.

Further, SGC's argument, focusing as it does on one phrase of one sentence of *N.J.S.A.* 40:55D–17(c), is belied by the language of that sentence when read in its entirety: "Failure of the governing body to hold a hearing *and* conclude a review of the record below *and* to render a decision within such specified period shall constitute a decision affirming the action of the board." (emphasis added). We agree with the Appellate Division that when read as a whole, *N.J.S.A.* 40:55D–17(c) clearly reflects a legislative "purpose * * * to require expeditious disposition of appeals by the governing body." 214 *N.J.Super.* at 638; *see also Lizak v. Faria, supra,* 96 *N.J.* at 492. ("One of the purposes of the MLUL * * * was to expedite the decision of land use applications."); *id.* at 496 ("[T]he Legislature clearly frowns upon municipal inaction."). By focusing on only one phrase, SGC's argument ignores the tenor of the entire section. The language of a statute "must be taken in context and the statute must be construed in conformity with its objectives." *Hartmann v. Maplewood School Transp. Co.,* 106 *N.J.Super.* 187, 193 (Law Div.1969), aff'd o.b., 109 *N.J.Super.* 497 (App. Div.1970). Here the Linden City Council complied with the statute's requirements that it hold a hearing, conduct a review, and render a decision within the statutory period. The fact that

the "decision" reached was inconclusive—at least in the sense that its meaning remained a continuing subject of dispute—does not serve to convert the Council's attempted action into "inaction" such as to produce a statutory affirmance of the Board's grant of the variance.

Next, SGC concedes that the hearing before the governing body is a *de novo* review on the record created before the Board, yet it urges that the proceeding is still appellate in nature, and that the appellant bears the burden of demonstrating entitlement to the relief sought. In this case, then, plaintiffs—as objectors below—should have had the burden of proving that SGC was not entitled to the variance. Hence, because plaintiffs failed to convince a majority of the Council to vote to reverse the Board, the tie vote resulted in an affirmance of the result below.

The argument misconstrues the nature of *de novo* proceedings. We concluded in *Evesham* that under *N.J.S.A.* 40:55D–17, governing bodies reviewing an action by a board of adjustment had the "authority to make a *de novo* review of the record established before the board and reach its own decision in the matter subject only to the requirement that its findings and conclusions are supported by the record." 86 *N.J.* at 300. "The governing body's task * * * is to consider the record * * * and the legal arguments of counsel and to make its own findings and conclusions based on that record and argument." *Id.* at 302. Although *Evesham* was decided prior to the amendment of the MLUL by *L.* 1984, *c.* 20, we record our agreement with Judge Conley's conclusion that those amendments did not overrule our decision in *Evesham*. *See Illes v. Edison Township Zoning Bd. of Adjustment*, 203 *N.J.Super.* 598, 605–10 (Law Div.1985).

In *Housing Authority of Newark v. Norfolk Realty Company*, 71 *N.J.* 314 (1976), an eminent domain case, we explained that "[a] trial *de novo* means, 'trying the matter anew, the same as if it had not been heard before and as if no decision

had been previously rendered.' " *Id.* at 326 (quoting *Farmingdale Supermarket, Inc. v. United States*, 336 *F.Supp.* 534, 536 (D.N.J.1971)); see also *State v. Joas*, 34 *N.J.* 179, 189 (1961) (appeal to county court on conviction by municipal court of motor vehicle offense "results in a trial *de novo* * * * [that] nullifies the proceedings before the municipal court"). The nature of a *de novo* proceeding is the same whether it be in the context of a trial in the Law Division or, as in this case, in the context of a governing body's review of actions by the board of adjustment. If the matter truly is to be heard "anew, the same as if it had not been heard before," it follows that the parties in the *de novo* proceeding must remain in the same procedural posture that they maintained in the initial proceeding, and that the burden of demonstrating entitlement to the relief sought remains with the same party—the applicant—throughout. *Cf. Norfolk Realty, supra,* 71 *N.J.* at 326 (party that proceeded first at administrative hearing also proceeds first at the trial *de novo* ). Shifting the burden to the "appellant" would ignore these basic principles, a result that we decline to adopt. We therefore hold that on an appeal under *N.J.S.A.* 40:55D–17 to a governing body from a final decision by a board of adjustment approving an application for a variance pursuant to *N.J.S.A.* 40:55D–70(d), the applicant before the board retains the burden of demonstrating entitlement to the relief sought.

█ Finally, *amici* point to the apparent disparity between the standard of review applicable when board of adjustment decisions are appealed to a governing body, and the standard applied by a reviewing court, suggesting an unfairness in drawing such a distinction. When the board's action is appealed to the governing body, the applicant bears the burden of demonstrating anew its entitlement to the variance, whereas when the board's action is appealed to the Law Division, the grant of the variance is entitled to a presumption of validity, and the reviewing court is limited to a determination of whether the board's action was arbitrary, unreasonable, or capricious. Although we agree with *amici* 's statement of the relevant

principles of law, we nevertheless believe that the discrepancy complained of is entirely consistent with the MLUL.

The trial court in this case properly stated the general rule that on appeal to the Law Division, an action by a municipal agency is entitled to a presumption of validity. See 211 *N.J.Super.* at 83, and the authorities cited therein. The court's scope of review is restricted to a determination of whether the agency's action was so arbitrary, unreasonable, or capricious as to amount to an abuse of discretion. *E.g., Kramer v. Board of Adjustment, Sea Girt,* 45 *N.J.* 268, 296–97 (1965). Underlying that principle is the notion that local public bodies, possessing a "peculiar knowledge of local conditions," are better suited than is a court to make decisions regarding local zoning issues. *Charlie Brown of Chatham v. Board of Adjustment,* 202 *N.J.Super.* 312, 321 (App.Div.1985); *accord Kramer v. Board of Adjustment, supra,* 45 *N.J.* at 296; *Degnan v. Monetti,* 210 *N.J.Super.* 174, 182 (App.Div.1986). Such expertise and knowledge are not unique to the board of adjustment, for the governing body enjoys them as well. *See Evesham, supra,* 86 *N.J.* at 301 (governing body is "directly responsible to the citizenry" and has "its own expertise and knowledge of the community.").

The legislature has demonstrated a particular concern regarding the granting of use variances by local governing bodies. Prior to the enactment of the MLUL a board of adjustment did not have the power to grant a variance but could only recommend that the governing body grant the variance. *See N.J.S.A.* 40:55–39(d) (repealed by *L.* 1975, c. 291, § 80); *Kramer v. Board of Adjustment, supra,* 45 *N.J.* at 274. In contrast, the MLUL gives the board the authority to grant the variance, but only by the affirmative vote of at least five out of the seven board members. *N.J.S.A.* 44:55D–70(d).

Further, as we held just last term, *N.J.S.A.* 40:55D–70(d) requires "an enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a

use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance." *Medici v. BPR Co.*, 107 *N.J.* 1, 4 (1987). We acknowledged that although this requirement would narrow to some extent the board's discretion in reviewing applications for use variances, it would nonetheless "also effectuate the legislature's apparent objective of encouraging municipalities to make zoning decisions by ordinance rather than by variance." *Id.* at 5.

Moreover, under *N.J.S.A.* 40:55D–17(a), although municipalities now have the option of providing by ordinance for the governing body's review of a board's decision granting a use variance, the governing body does not have that power in respect of a board decision denying the variance application. The distinction is an important one: by limiting review to only those applications that are granted, the governing body is involved solely in those decisions that might actually impair or significantly affect the master plan or zoning ordinance, otherwise leaving intact the exercise of the board's discretion in denying the application. As we stated in *Medici*, this legislative scheme

> undoubtedly reflects the legislature's determination that boards of adjustment possess special competence to decide use-variance applications, and that absent an appeal no participation by the governing body is necessary. However, delegation of the authority to grant use variances to boards of adjustment increases the likelihood that such variances may conflict with the intent of the master plan and zoning ordinance to a greater extent than was the case when the power to grant them was vested in the governing body. Tension between use variances and the zoning ordinance and master plan is less likely in those municipalities that authorize appeals from the grant of use variances to the governing body. [107 *N.J.* at 20.]

The fact that governing bodies have the power—albeit an optional one—to review a board's granting of a use variance indicates to us that the legislature has envisioned a power in the governing body that is different from that accorded a reviewing court. If the governing body were to be limited, as is a court, to the determination of whether the board's action

was arbitrary, unreasonable, or capricious, then there would be no reason to provide for that procedural option. We conclude that the existence of that option evidences a legislative intent to grant to the governing body a substantive role in the variance process, a role for which that body is well-suited in light of its own knowledge and expertise in the area of local zoning matters. Having adopted the zoning ordinance from which the variance is sought, the governing body is perhaps uniquely qualified to determine whether granting the requested variance would substantially impair the ordinance or the master plan. Allowing that body a broad power in respect of its review of a grant of a variance is not only reasonable but also consistent with the purposes and provisions of the MLUL. Our holding in this case that the applicant bears the burden on appeal from the board to the governing body is in harmony with that legislative scheme.

Judgment affirmed.

O'HERN, J., concurring.

I would have voted otherwise in this case but believe that a dissent would serve no purpose. It is more important that such a zoning issue be settled than that it continue to be unsettled in the hope that some future court might reverse course.

At the same time, today's result should instill in us a sense of disquietude. It leaves the untidy consequence that a "no-decision" by a governing body on a zoning appeal is invested with the same presumption of regularity as is a reasoned decision of the zoning board.

This consequence runs counter to important policy values that we have perceived in the MLUL. In our recent cases, *Medici v. BPR Co.*, 107 *N.J.* 1, 23 (1987), *Davis Enterprises v. Karpf*, 105 *N.J.* 476, 485 (1987), and *PRB Enterprises, Inc. v. South Brunswick Planning Bd.*, 105 *N.J.* 1, 8–9 (1987), we

have increasingly emphasized that planning, and not *ad hoc* decision-making, is the cornerstone of sound governmental policy in this area. *See also Riggs v. Township of Long Beach,* 109 *N.J.* 601, 619–22 (1988) (Handler, J., concurring) (heightened role of planning is part of MLUL process for establishing clearer standards for the evaluation of municipal land use regulation). Thus, in *Medici, supra,* we required "in addition to proof of special reasons, an enhanced quality of proof and clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance." 107 *N.J.* at 21. That heightened process of reasoned decision-making is absent when the governing body's indecision is allowed to resolve a zoning appeal.

Nevertheless, I must recognize that the majority perceives another important policy that the Court must respect. The Legislature has allowed municipalities to provide for appeals to the governing body of grants of use variances. That zoning policy may be understood to require the applicant to persuade the governing body as well as the zoning board of the merits of its case.

I would judge the first policy to be paramount. Yet there are limits to what we can do with the words of a statute. Those practitioners and government officials who work daily in this field will undoubtedly be able to present to the Legislature a suitable plan to resolve these policy conflicts.

O'HERN, J., concurs in result.

*For Affirmance*—Chief Justice WILENTZ, and Justices, CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.