PREAKNESS HILL, INC., PLAINTIFF-APPELLANT, v. THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF WAYNE, AND THE TOWNSHIP OF WAYNE, IN THE COUNTY OF PASSAIC AND STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted October 20, 1987—Decided November 19, 1987.

176

Before Judges MICHELS, SHEBELL and A.M. STEIN.

*Gavenda, Rubin & Connelly,* attorneys for appellant (*A. Michael Rubin,* on the brief).

*Anthony Fiorello,* attorney for respondents (*Holly C. Stern,* on the brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Appellant Preakness Hill, Inc. was granted a "special reasons" use variance by the Wayne Township Board of Adjustment to construct cluster housing on a 4.4 acre site. On appeal by a neighboring property owner, the respondent township council held a *de novo* hearing based on the record below and voted 4 "yes," 3 "no," 2 absent, on a resolution to reverse the board of adjustment action. Thereafter applicant's attorney advised the council by letter that the vote was insufficient to satisfy the enhanced majority requirement of *N.J.S.A.* 40:55D–17e and filed this action in lieu of prerogative writ.

The council attempted to schedule a further meeting so that the absent members could vote. When the applicant sought to restrain a further hearing, the parties agreed to an order staying the hearing until the Law Division could rule on the effect of the vote. The trial judge originally found for the applicant, relying on the Law Division opinion in *Committee for a Rickel Alternative v. City of Linden,* 211 *N.J.Super.* 79 (Law Div.1986). Before entering formal judgment, he reversed

his decision based upon the Appellate Division's reversal in *Rickel,* 214 *N.J.Super.* 631 (App.Div.1987) (an opinion now before the New Jersey Supreme Court on certification (107 *N.J.* 136)). Plaintiff Preakness Hill appeals the decision of the trial court. The Supreme Court denied appellant's motion for direct certification. ·

We, the majority herein, disagree with the holding in *Rickel* and reverse the Law Division's judgment. The simple fact is that the result compelled by *Rickel* and the dissent herein would result in the reversal of an otherwise valid board of adjustment grant of a variance notwithstanding the failure of the governing body to muster the statutorily required "enhanced majority" vote on the motion to reverse the board's · action. Such a decision would fly in the face of clear legislative intent.

A detailed statement of the facts involved in the variance application will serve no useful purpose as there is only a legal issue before us at this time. The question presented concerns the effect of the failure of a governing body to reach an enhanced majority vote on the appeal from the board of adjustment. Is the variance appealed from granted or denied?

The issues in this case are governed by § 17 of the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 *et seq.* Section 17 is entitled "appeal to the governing body; time; notice; modification; stay of proceedings." Subsection e of § 17 provides:

> The affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand, or affirm with or without conditions any final action of the board of adjustment.

Subsection c of § 17 provides in pertinent part:

> The governing body *shall* conclude a review of the record below not later than 95 days from the date of publication of notice of the decision below pursuant to subsection i. of section 6 of this act (C. 40:55D–10), unless the applicant consents in writing to an extension of such period. Failure of the governing body to hold a hearing and conclude a review of the record below and *to render a decision within such specified period shall constitute a decision affirming the action of the board.* [Emphasis added].

Under *N.J.S.A.* 40:55D–3, the term "shall" indicates a mandatory requirement. Thus, § 17c makes it mandatory that the

governing body: (1) hold a hearing; (2) conclude a review of the record in the specified time period, and (3) render a decision. Failure to carry out each of these specified requirements within 95 days constitutes a decision affirming the action of the board.

Appellant contends that a decision was not reached by the governing body within 95 days of the publication of notice of the board of adjustment decision, and therefore, the action of that board should be affirmed. "Decision" is not defined in the Land Use Law. "Decision" is elsewhere defined as a

> *determination* arrived at after consideration of facts, and, in legal context, law. A popular rather than technical or legal word; a comprehensive term having no fixed, legal meaning. It may be employed as referring to ministerial acts as well as to those that are judicial or of a judicial character.
>
> A *determination* of a judicial or quasi judicial nature. A judgment or decree pronounced by a court in settlement of a controversy submitted to it *and by way of authoritative answer to the questions raised before it.* [*Black's Law Dictionary* 366 (5th ed. 1979) (Emphasis added)].

*Webster's Third New International Dictionary* 585 (1976) defines "decision" as

> the act of deciding ... the act of settling or terminating (as a contest or controversy) by giving judgment; a determination arrived at after consideration; settlement, conclusion—see judgment, precedent, stare decisis; an account or report of a conclusion, esp. of a legal adjudication or judicial determination of a question or cause ...; an announcement (as of a judge) declaring the winner in a contest; the quality of being decided; prompt and fixed determination; firmness ...; the act of forming an opinion or of deciding upon a course of action....

A "determination," in turn, "implies an ending or finality of a controversy or suit." *Black's, supra* at 405.

The common meaning of decision invariably points to a finality or conclusion. Thus, it is reasonable to infer that the Legislature, by requiring a decision under § 17c, intended to compel not merely the action of a vote on the part of the governing body, but decisive action.

Section 17d states that

> [t]he governing body may reverse, remand or affirm with or without the imposition of conditions the final decision of the board of adjustment approving a variance pursuant to subsection d. of section 57 of P.L. 1975, c. 291 (C. 40:55D-70). The review shall be made on the record made before the board of adjustment.

However, if any of these actions is to be taken it shall be decided by an enhanced majority under the provisions of *N.J.S.A.* 40:55D–17e.

We believe it was the intent of the Legislature that if the governing body fails to vote to reverse, remand, or affirm by an enhanced majority then § 17c is to apply and the 95–day provision will control. The Legislature provided that only the approval of a variance is appealable to the governing body under *N.J.S.A.* 40:55D–17a, and it was aware that this would mean that a board of adjustment's granting of a variance would be affirmed in the absence of decisive action. The Legislature itself made it clear in its enactment of § 17c that unless the governing body reaches a decision within 95 days such inaction "shall constitute a decision affirming the action of the board."

Prior to the passage of the new Municipal Land Use Law, a board of adjustment could only recommend the granting of a use variance and could not itself approve a variance. *N.J.S.A.* 40:55–39d (repealed 1975). The new statute changed the authority of boards of adjustment to give them full authority to grant use variances on the affirmative vote of five members. *N.J.S.A.* 40:55D–70(d). We recognize that "variances to allow new nonconforming uses should be granted only sparingly and with great caution since they tend to impair sound zoning." *Kohl v. Mayor and Council of Fair Lawn,* 50 *N.J.* 268, 275 (1967). However, as the Supreme Court pointed out in *Medici v. BPR Co.,* 107 *N.J.* 1 (1987)

the specific legislative changes in our statutes regulating land use and zoning reflect significant policy decisions by the legislature concerning the proper relationship between use variances and zoning ordinances. *The power to grant use variances has been shifted from the governing body, whose responsibilities include enactment of the zoning ordinance, to the board of adjustment. This shift of authority undoubtedly reflects the legislature's determination that boards of adjustment possess special competence to decide use-variance applications, and that absent an appeal no participation by the governing body is necessary.* However, delegation of the authority to grant use variances to boards of adjustment increases the likelihood that such variances may conflict with the intent of the master plan and zoning ordinance to a greater extent than was the case when the power to grant them was vested in the governing body. Tension between use variances and the zoning ordinance and master plan is less likely in those municipalities that

authorize appeals from the grant of use variances to the governing body. *N.J.S.A.* 40:55D–17(a). [*Id.* at 19–20 (emphasis added)].

Respondents and the dissent argue that since the Supreme Court's decision in *Evesham Tp. Bd. of Adj. v. Evesham Tp.,* 86 *N.J.* 295 (1981) sets a *de novo* standard for a governing body's review of a board of adjustment decision, the applicant for the variance should retain the burden of persuasion on appeal before the governing body even though the applicant success-fully convinced the board to grant the variance. The court in *Rickel* acknowledged this philosophy when it stated:

We also point out that in general a person seeking relief from a public body has the burden to demonstrate his entitlement to it. Thus, an appellant ordinarily has the burden to show error in a judgment under review.... Accordingly, when an appellate court is equally divided it affirms.... Here, under *Evesham,* [the applicant] had the burden to convince the council that it was entitled to the variance. It did not do that. [214 *N.J.Super.* at 636 (citations omitted)].

■ *Evesham* does not address the question of who should carry the burden on appeal in such a situation. Even if *Evesham* did require the applicant to bear the burden on appeal, it must be remembered that *Evesham* was decided prior to the 1984 amendment to § 17(a) when applicants were allowed to appeal the board's denial of their variance. Such was the type of appeal under review in *Evesham.* 86 *N.J.* at 297. There the applicant was appealing and unquestionably had to bear the burden on appeal. *Evesham* only stands for the proposition that "where the action of a board of adjustment is challenged on appeal, the governing body is to have authority to make a de novo review of the record established before the board and reach its own decision in the matter subject only to the require-ment that its findings and conclusions are supported by the record." *Id.* at 300.

■ If the 1984 amendments were based on the premise that an applicant for a variance has the burden of sustaining the grant on appeal, we would expect clear evidence of a legislative intent to override the long standing rule that actions of a board of adjustment are presumed to be correct, and not the inconsist-ent requirement that an "enhanced majority" vote be required

to affirm the board's action. As stated by the Law Division in *Rickel:*

> It has long been held that the actions taken by a board of adjustment are presumed to be valid and that the party attacking the action of the board has the burden of showing otherwise. *Rexon v. Haddonfield Bd. of Adj.,* 10 *N.J.* 1 (1952); *Kenwood Assoc. v. Englewood Bd. of Adj.,* 141 *N.J.Super.* 1 (App.Div. 1976); *Bove v. Emerson Bd. of Adj.,* 100 *N.J.Super.* 95 (App.Div.1968). The rule clearly enunciated by our courts is that the determination of a local zoning board of adjustment is presumptively correct and its decision should not be overridden unless there is a clear showing of unreasonableness, arbitrariness or capriciousness of the action. *Kramer v. Sea Girt Bd. of Adj.,* 45 *N.J.* 268 (1965); *Ardolino v. Florham Pk. Bd. of Adj.,* 24 *N.J.* 94 (1957); *Value Oil Co. v. Irvington,* 152 *N.J.Super.* 354 (Law Div.1977). The granting of a variance is presumed valid and may only be upset when the decision has been arbitrary, unreasonable or capricious. *Kessler v. Bowker,* 174 *N.J.Super.* 478 (App.Div. 1979), cert. *den.* 85 *N.J.* 99 (1980). [211 *N.J.Super.* at 83].

We do not believe that the holding in *Evesham,* that the review by the governing body is *de novo,* overrules this presumption particularly since in some municipalities review of the board's decision will proceed directly to the courts and not to the governing body. The Legislature bestowed the right to appeal to the governing body only where the municipality has provided for such review by ordinance. The Legislature therefore envisioned that in certain municipalities no right of appeal from the grant of a use variance by a board of adjustment would exist except to the courts.

Our dissenting colleague asserts that "[t]he granting of variances for nonconforming uses, implicating State policy considerations, is properly left to the State's elected officials, *i.e.,* the governing body." We have noted, however, that the Municipal Land Use Law demonstrated a contrary intent, *i.e.,* to strengthen the powers of boards of adjustment by permitting them to grant use variances, not merely recommend them, and to permit appeals solely of the granting of use variances and then only where the governing body has enacted such a procedure by ordinance.

We are convinced that if the Legislature intended that the failure to reach an enhanced majority before the governing body would result in a denial it would have clearly stated it.

More importantly, the Legislature would have had no reason to require that the governing body reach an enhanced majority vote to reverse a board decision under the *Rickel* rationale. Since only board approvals of use variances may be appealed, a vote to reverse is always a denial of the variance. Denial is the invariable result if an enhanced majority is not obtained for approval under the *Rickel* holding and the rationale of the dissent. If such a result were intended, the Legislature could not logically have provided the requirement of an enhanced majority for reversal.

Prior to being amended in 1984, § 17e read as follows:
> The affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand, or modify any final action of either board.

Failure of the governing body to reach an enhanced majority under the prior enactment resulted in an affirmance of the board's action since affirmance was the only option not requiring an enhanced majority. *Rickel,* 214 *N.J.Super.* at 635.

We do not agree with respondents' contention that by amending this provision to delete the word "modify" and to add "affirm with or without conditions" the Legislature intended to remove automatic affirmance of the board's action under § 17e. The logic of such a proposed intent by the Legislature dissipates when we see that it did not delete the term "reverse" from § 17e and thereby retained the requirement that a reversal be compelled only by an enhanced majority vote. We do not envision that the change in terms between "modify" and "affirm with or without conditions" was intended to be a drastic alteration in the Municipal Land Use Law's structure. We find no legislative intent to detract from the powers of boards of adjustment. As the court stated in *Illes v. Edison Tp. Zoning Bd. of Adj.,* 203 *N.J.Super.* 598, 608 (Law Div.1985), "an affirmance with conditions is a modification."

> It is, of course, often stated that when the Legislature has deleted a word or phrase that is a material change in language, courts should infer a purposeful alteration in substance. *Cold Indian Springs Corp. v. Tp. of Ocean,* 154 *N.J.Super.* 75, 95 (Law Div.1977), aff'd 161 *N.J.Super.* 586 (App.Div.1978), aff'd 81 *N.J.* 502 (1980). The deletion of the word "modify," argue defendants, is

such a material change. As noted above, however, to affirm with or without conditions implies the power to modify. With the removal of all but approvals of use variances from the governing bodies' appeal jurisdiction accomplished by the amendment to subsection [17] (a), the Legislature could well have reached the conclusion that the power to "modify" would be superfluous. [*Id.* at 609].

In the face of clear legislative intent to grant more power to boards of adjustment, we must conclude that the Legislature also intended that the failure of the governing body to either reverse, remand, or affirm with or without conditions by the required enhanced majority vote, within 95 days from publication of notice of the decision by the board of adjustment, should result in a decision affirming the board's action.

The judgment of the Law Division is reversed. The matter is remanded to the Law Division for a determination of the effect of the consent order for stay previously entered.

MICHELS, P.J.A.D. (dissenting).

I respectfully disagree with the majority. The decision of the trial court was controlled by and consistent with our opinion in *Committee For a Rickel Alternative v. City of Linden,* 214 *N.J.Super.* 631 (App.Div.1987), certif. granted 107 *N.J.* 136 (1987). In my view, the *Rickel* decision is sound and should be followed. I have carefully reviewed the entire record in light of the contentions raised and find that plaintiff Preakness Hill, Inc. failed to sustain its burden of convincing defendant Township Council of the Township of Wayne of its entitlement to the use variance.

In *Evesham Tp. Bd. of Adj. v. Evesham Tp.,* 86 *N.J.* 295, 300 (1981), our Supreme Court declared that under the present Municipal Land Use Laws, *N.J.S.A.* 40:55D-1 *et seq.,* "the Legislature intended that where the action of a board of adjustment is challenged on appeal, the governing body is to have authority to make a *de novo* review of the record established before the board and reach its own decision in the matter...." Consequently, since an applicant seeking relief from a public body has the burden of demonstrating its entitlement to relief, an applicant seeking a use variance has the burden of convinc-

ing the governing body that it is entitled to the use variance. *Rickel*, 214 *N.J.Super.* at 636. The burden properly imposed upon such an applicant is to obtain a majority vote of the full authorized membership of the governing body on appeal to sustain the variance.[1] *Id.* at 636–637; *N.J.S.A.* 40:55D–17e.

Particularly noteworthy in this respect, as the *Rickel* court emphasized, is the language of *N.J.S.A.* 40:55D–17e prior to the 1984 amendments of the Municipal Land Use Law. The prior statute provided that:

> The affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand or *modify* any final action of ... [the board of adjustment]. (emphasis added).

Under that prior law, a tie vote by the governing body resulted in an affirmance of the board of adjustment's grant of a variance. The Legislature, by amendment of the statute by *L.*1984, *c.* 20, § 6 deleting the language that resulted in a tie vote affirming the board, undoubtedly manifested a contrary intent. *See Rickel*, 214 *N.J.Super.* at 637. Since the current statute now requires a vote of a majority of the full authorized membership of the governing body to affirm the grant of a variance, it is reasonable and logical to infer that the Legislature intended that less than a majority vote of the full authorized membership constituted a denial of the variance by the governing body acting in its *de novo* capacity. Judge Greenberg's comments in *Rickel* on this point are instructive and worthwhile repeating:

> This conclusion seems particularly reasonable in view of the fact that *Evesham* was decided in 1981 so that when the 1984 amendment was enacted the

---

[1]This conclusion is further supported by *N.J.S.A.* 40:55D–70d which allows the board of adjustment to grant a variance only if five of the seven members of the board agree to it. "Inasmuch as the statutory authorization to the council in *N.J.S.A.* 40:55D–17a is to entertain appeals from variances granted pursuant to *N.J.S.A.* 40:55D–70d, the requirement of a majority vote of the full authorized membership of the governing body on the appeal to sustain the variance is consistent with the Legislature's requirement for an enhanced majority to approve it in the first instance." *Rickel*, 214 *N.J.Super.* at 636–637.

> Legislature was presumably aware that in zoning appeals the governing body acted *de novo.* *See Brewer v. Porch,* 53 *N.J.* 167, 174 (1969). In that situation the Legislature could have reasonably inferred that an applicant for a variance on an appeal to the governing body would have the burden to obtain a majority of its full authorized membership. In that case, a tie vote would reverse a decision of the board granting a variance. [*Rickel,* 214 *N.J.Super.* at 637].

Furthermore, *N.J.S.A.* 40:55D–17c is inapplicable under the facts present in this case. *N.J.S.A.* 40:55D–17c, in pertinent part, provides that:

> The governing body shall conclude a review of the record below not later than 95 days from the date of publication of notice of the decision below ... unless the applicant consents in writing to an extension of such period. Failure of the governing body to hold a hearing and conclude a review of the record below and to render a decision within such specified period shall constitute a decision affirming the action of the board.

As the *Rickel* court noted, the Legislature did not provide that a failure of the governing body to vote to affirm, remand or reverse by an enhanced majority within the 95–day decision period constituted an affirmance of the variance. It simply provided that the failure to hold a hearing, conclude a review of the record and render a decision within the 95–day period constituted an affirmance of the action of the board of adjustment. The purpose of *N.J.S.A.* 40:55D–17c is to require expeditious disposition of appeals by the governing body, *Lizak v. Faria,* 96 *N.J.* 482, 492 (1984); *Rickel,* 214 *N.J.Super.* at 638, not to enable an applicant to obtain a use variance by forfeiture of authority by the governing body.

Here, a hearing was conducted, a review of the record was concluded, and the decision was rendered within the prescribed time. The requirements of *N.J.S.A.* 40:55D–17c have therefore been complied with. Since the applicant has the burden of convincing the governing body of its entitlement to a variance, such a variance should not be rendered "approved" by virtue of a decision by the governing body of less than the enhanced majority, when such decision was rendered within the 95–day decision period.

Finally, the *Rickel* court's construction of the statute is consistent with the clear policy of our State to allow new

nonconforming uses "only sparingly and with great caution." *Kohl v. Mayor and Council of Fair Lawn,* 50 *N.J.* 268, 275 (1967). The granting of variances for nonconforming uses, implicating State policy considerations, is properly left to the State's elected officials, *i.e.,* the governing body. Consequently, I hold to the view that an applicant for such a variance should properly bear the burden of convincing the governing body of its entitlement by a majority vote of the full membership. This policy would become frustrated and the zoning plans of the various municipalities throughout the State undermined by allowing an applicant for a variance to succeed on appeal without carrying an enhanced majority voting to grant such variance. I cannot conceive that the Legislature intended such a result when it enacted the present Municipal Land Use Law.

Here, the Township Council voted four to three to reverse the decision of the board of adjustment granting the variance. Thus, plaintiff fell far short of an enhanced majority vote of the Township Council required for the grant of the variance. Without that enhanced majority vote, a non-conforming use variance should not be granted.

Accordingly, I would affirm the judgment of the Law Division under review.