HARRY GRANT CENTER CORP., A NEW JERSEY CORPORATION, PLAINTIFF–RESPONDENT, v. MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE AND THE CONSTRUCTION OFFICIAL OF THE BOROUGH OF FORT LEE, DEFENDANTS–APPELLANTS, AND MICHAEL INGANAMORT, MICO, A NEW JERSEY PARTNERSHIP, AND METROPOLITAN LIFE INSURANCE COMPANY, INTERVENORS.

Superior Court of New Jersey
Appellate Division

Submitted May 16, 1989—Decided August 14, 1989.

Before Judges PRESSLER, O'BRIEN and SCALERA.

*Kenneth W. Herbert,* attorney for appellants.

*Hartmann, Brooks & Van Dam,* attorneys for respondent (*Stuart D. Liebman,* on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

This is an appeal by defendant Mayor and Council of the Borough of Fort Lee (Mayor and Council) from a determination by the Law Division that the Mayor and Council did not have jurisdiction to hear and decide an appeal by objectors[1] to a use variance granted by the Board of Adjustment (*N.J.S.A.* 40:55D-70d; *N.J.S.A.* 40:55D-17a). We reverse and remand.

Plaintiff Harry Grant Center Corp. (Grant) owns certain property in the Borough of Fort Lee, located partly in a C-3 zone, a commercial zone where high-rise office buildings are permitted but residential use is prohibited, and partly in an R-5 residential zone, which permits garden-type apartments. Grant proposed to erect a 28-story condominium apartment complex entirely on the portion of the property in the C-3 zone. When the construction official denied Grant's application because it did not conform to the Borough's zoning ordinance, Grant appealed to the Board of Adjustment (Board). After several hearings, the Board unanimously granted site plan approval on February 2, 1988, including a use variance pursuant to *N.J.S.A.* 40:55D-70d and other related bulk variances.

Intervenors Michael Inganamort, Mico, a New Jersey partnership, and Metropolitan Life Insurance Company (objectors or intervenors) who had objected to the application before the Board, filed a notice of appeal on January 14, 1988, with the

---

[1] Intervenors Michael Inganamort, MICO, a New Jersey Partnership, and Metropolitan Life, who had also opposed the granting of the use variance by the Board of Adjustment, are no longer parties to this appeal. They had filed a separate appeal from the Law Division decision (A-5484-87T1) which we dismissed on April 13, 1989 after we were advised by the parties that their controversy had been resolved and the appeal withdrawn. *See* footnote 2.

Mayor and Council. After a hearing on March 7, 1988, the Mayor and Council adopted a resolution on March 10, 1988, reversing the Board and denying Grant's application.

On March 31, 1988, Grant filed a complaint in lieu of prerogative writs [2] against the Mayor and Council and the construction official seeking a judgment, either declaring the resolution of the Mayor and Council adopted on March 10, 1988 null and void or, in the alternative, declaring said resolution to be an affirmance of the action of the Board and directing the construction official to issue necessary permits for construction. Process was by order to show cause, and the matter was ultimately heard by the Law Division on May 10, 1988. In addition to Grant and defendants Mayor and Council, the objectors were also represented by counsel and presented oral argument.[3]

After oral argument on May 10, 1988, the Law Division concluded that the Mayor and Council were without jurisdiction to hear Grant's appeal and entered a judgment on May 24, 1988 declaring the resolution adopted by the Mayor and Council on March 10, 1988, null and void and of no effect for the reasons set forth in its oral opinion. Following *Tucci v. Borough of Moonachie*, 220 *N.J.Super.* 280 (Law Div.1987), the trial judge concluded that the Mayor and Council lacked jurisdiction because it had not adopted an ordinance after the amendment of *N.J.S.A.* 40:55D–17a by *L.* 1984, *c.* 20, § 6. This amendment limits appeals to the governing body from a final decision of the

[2] Previously, on March 14, 1988, the objectors had filed a separate suit (L–32758–88PW) against the Board of Adjustment and Mayor and Council of the Borough of Fort Lee, seeking in the first count to reverse the decision of the Board and in the second count to (a) affirm the resolution of the Mayor and Council which reversed the decision of the Board and (b) reversing that portion of the vote or decision of the Mayor and Council which was inconsistent with the Board's decision. We have been advised that this action was settled on March 16, 1989. *See* footnote 1.

[3] The objectors were apparently granted leave to intervene in the action on May 6, 1988. We have not been provided with a copy of the pleadings in connection with their intervention.

Board of Adjustment approving a variance pursuant to *N.J.S.A.* 40:55D–70d to those municipalities which permit such appeals by ordinance.

As originally enacted in the Municipal Land Use Law, *N.J. S.A.* 40:55D–17a read in pertinent part:

> a. Any interested party may appeal to the governing body (1) from any final decision of a board of adjustment approving an application for development pursuant to subsection 57d. of this act, [40:55D–70d] and (2) if so permitted by ordinance, any other final decision of a board of adjustment or planning board on any other class of applications for development.

By *L.* 1979, *c.* 216 § 11, this section was amended to read as follows:

> a. Any interested party desiring to appeal the decision of a municipal agency shall appeal to the governing body (1) any final decision of a board of adjustment approving an application for development pursuant to subsection 57d. of this act, [40:55D–70d] and
>
> (2) if so permitted by ordinance, any other final decision of a board of adjustment or planning board on any class of applications for development.

By *L.* 1984, *c.* 20 § 6, this section of *N.J.S.A.* 40:55D–17a was finally amended to read:

> a. Any interested party may appeal to the governing body any final decision of a board of adjustment approving an application for development pursuant to subsection 57d. of this act [40:55D-70d] if so permitted by ordinance.

After the Legislature enacted the Municipal Land Use Law by *L.* 1975, *c.* 291, which became effective on August 1, 1976, the Mayor and Council adopted an ordinance in 1977, including a section concerning appeals from the Zoning Board of Adjustment to the Borough Council, which provides in pertinent part:

> 17–4.2 *Appeals from Zoning Board of Adjustment to Borough Council*
> a. Any interested party may appeal to the governing body any final decision of the board of adjustment granting a variance pursuant to subsection 17–2.7d of this chapter.[4]

---

4Section 17–4.2 also provides in pertinent part:

(c) ...

The governing body shall conclude a review of the record below not later than 95 days from the date of filing the notice of appeal unless special circumstances exist which justify the governing body to extend this period for a reasonable time. Failure of the governing body to hold a hearing and conclude a review of the record below and to render a decision within

As the trial judge observed, subsection 17–2.7d deals with fees to be paid for applications for variances. On May 25, 1988, the Mayor and Council moved under *R.* 4:50 for relief from the final judgment entered on May 24, 1988, in order to introduce into evidence "the corrected version" of the ordinance authorizing the Borough to hear "use" variance appeals. Attached to that motion was an affidavit of the borough attorney characterizing the reference to subsection 17–2.7d [5] as a typographical error and noting that the court had inquired of him as to how the ordinance should properly be read, to which he had responded that he would confer with the borough clerk in an effort to resolve the question. Notwithstanding that the ambiguity was not resolved, the attorney stated that the trial judge entered judgment for plaintiff relying "I believe, on an interpretation of the Ordinance which permitted appeals to the Governing Body from the grant by the Board of Adjustment of any type of variance." In his affidavit the attorney then referred to an investigation by the borough clerk, who he said would be submitting a certification explaining that the ordinance was intended to read as follows:

> a. Any interested party may appeal to the governing body any final decision of the board of adjustment granting a variance pursuant to Secion [*sic*] 10(d) of Article II of this Ordinance....

By order entered June 10, 1988, the trial judge denied the motion of the Mayor and Council for relief from the judgment for reasons set forth on the record on June 10, 1988.

---

the aforementioned time period shall constitute affirmance of the board's decision.

(d) The governing body may reverse, remand or affirm, wholly or in part, or may modify any final action of the board of adjustment.

(e) The affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand or modify any action of the zoning board.

[5] The attorney's affidavit incorrectly quotes section 17–4.2a as reading:

Any interested party may appeal to the governing body any final decision of the board of adjustment granting a variance pursuant to Section (d) of Article II of this ordinance....

It is unclear whether the borough attorney ever submitted the certification of the borough clerk to the trial judge in support of his motion, and we have not been supplied with a copy of the transcript of June 10, 1988, giving the reasons why the trial judge denied the motion. At our request the borough attorney supplied us with a copy of subsection 17-4.2 of the Revised Ordinances "Supp. 1/83," which reflects that the language quoted by the trial judge is that which is contained in the ordinance. In response to our further request for a copy of the certification of the borough clerk which was to be submitted to the trial judge in support of the motion for relief from judgment, according to the borough attorney's affidavit submitted with that motion, we received a certification of Carol Kohout, the Borough Clerk, dated June 26, 1989. Obviously, this is not the certification submitted to the trial judge and is improperly before us. However, that certification states that the reference to subsection 17-2.7d was intended to read subsection 17-2.10d, concerning the power of the Board of Adjustment to grant use variances.

Since we are unable to determine whether a certification by the borough clerk was ever provided to the trial judge and are unaware of the reasons why the trial judge denied the motion for relief from final judgment, we are obliged to remand this matter to the trial judge to address the question as to the language of the Fort Lee ordinance as enacted and published after its adoption and as considered by the judge in reaching his decision that the Mayor and Council was without jurisdiction to hear the appeal from the Board. However, we address the issue raised by this appeal as guidance to the trial judge since we conclude that *Tucci v. Borough of Moonachie*, upon which he relied, was incorrectly decided. Furthermore, in addressing the question of the propriety of the Mayor's vote, although not decided by him, the trial judge cited *Preakness Hill v. Wayne*, 221 *N.J.Super.* 175 (App.Div.1987), which has since been overruled by the Supreme Court, as we will discuss later.

In *Tucci v. Borough of Moonachie*, the Law Division determined that the failure of the Borough of Moonachie to adopt an ordinance permitting any interested party to appeal a final decision of the board of adjustment approving a variance pursuant to subsection 40:55D–70d, after the 1984 amendment to *N.J.S.A.* 40:55D–17a, left the municipality without jurisdiction to hear such an appeal. This decision was made in spite of the fact that Moonachie had, before the 1984 amendment to *N.J.S.A.* 40:55D–17a, adopted an ordinance which provided:

> Any interested party desiring to appeal the decision of the municipal agency shall appeal to the governing body (a) any final decision of a board of adjustment approving an application for development pursuant to *N.J.S.A.* 40:55D–57d [*sic*] and (b) any other final decision of the planning board or zoning board of adjustment on any class of applications for development.[6] [220 *N.J.Super.* at 282]

In *Tucci*, the judge concluded:

> As mentioned above, the prior section of the Municipal Land Use Law provided for appeals to the governing body from all use variances and gave the municipality discretion to hear other final decisions of municipal agencies. This amendment gives the governing body the option of determining by ordinance whether it will hear appeals from the granting of (d) variances. Implicit in the exercise of an option is the need for an affirmative act. It is the court's opinion that the logical interpretation of this amendment is to provide for a review of a (d) or use variance only by a governing body which expressly assumes such right of review by adopting an ordinance. Under prior law many municipalities had in effect ordinances similar to that of the Borough of Moonachie which reflected the language of *N.J.S.A.* 40:55D–17 before the 1984 amendment. To interpret these ordinances as providing appeal to the governing body would, in effect, allow such an appeal in almost every instance of a grant of a use variance and subvert the purpose of the amendment to limit appeals. [*Id.* at 283].

Although this conclusion has surface appeal, and was adopted by the trial judge in this case, we conclude it does not reflect

---

[6]We observe that the language of the Moonachie ordinance as quoted by the trial judge in *Tucci* refers to an application for development pursuant to *N.J.S.A.* 40:55D–57d. We have placed a [*sic*] at that point since we are not sure whether the ordinance incorrectly took the figures "57d" from *N.J.S.A.* 40:55D–17a, or whether it correctly referred to *N.J.S.A.* 40:55D–70d. *N.J.S.A.* 40:55D–57 does not have a subsection "d." However, the *Tucci* judge seemed to have assumed that the governing body intended to refer to the grant of a use variance under *N.J.S.A.* 40:55D–70d.

the legislative intent in amending *N.J.S.A.* 40:55D–17a. In our judgment, an interpretation of the statutory language under review requires an analysis of the history of use variances. As Justice Holmes observed, "[A] page of history is worth a volume of logic." *New York Trust Co. v. Eisner*, 256 *U.S.* 345, 349, 41 *S.Ct.* 506, 507, 65 *L.Ed.* 963, 983 (1921). Recently, our Supreme Court said in *Com. for a Rickel Altern. v. City of Linden*, 111 *N.J.* 192, 201–202 (1988):

> The legislature has demonstrated a particular concern regarding the granting of use variances by local governing bodies. Prior to the enactment of the MLUL a board of adjustment did not have the power to grant a variance but could only recommend that the governing body grant the variance. *See N.J.S.A.* 40:55–39(d) (repealed by *L.* 1975, *c.* 291, § 80); *Kramer v. Board of Adjustment, supra* 45 *N.J.* [268] at 274. In contrast, the MLUL gives the board the authority to grant the variance, but only by the affirmative vote of at least five out of the seven board members. *N.J.S.A.* 40:55D–70(d).
>
> Further, as we held just last term, *N.J.S.A.* 40:55D–70(d) requires an 'enhanced quality of proof, as well as clear and specific findings by the board of adjustment, that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance.' *Medici v. BPR Co.*, 107 *N.J.* 1, 4 (1987). We acknowledge that although this requirement would narrow to some extent the board's discretion in reviewing applications for use variances, it would nonetheless 'also effectuate the legislature's apparent objective of encouraging municipalities to make zoning decisions by ordinances rather than by variance.' *Id.* at 5.
>
> Moreover, under *N.J.S.A.* 40:55D–17(a), although municipalities now have the option of providing by ordinance for the governing body's review of a board's decision granting a use variance, the governing body does not have that power in respect of a board decision denying the variance application. The distinction is an important one: by limiting review to only those applications that are granted, the governing body is involved solely in those decisions that might actually impair or significantly affect the master plan or zoning ordinance, otherwise leaving intact the exercise of the board's discretion in denying the application.

In *Medici v. BPR Co.*, 107 *N.J.* 1, 20 (1987), the Supreme Court said:

> [This legislative scheme] undoubtedly reflects the legislature's determination that boards of adjustment possess special competence to decide use-variance applications, and that absent an appeal no participation by the governing body is necessary. However, delegation of the authority to grant use variances to boards of adjustment increases the likelihood that such variances may conflict with the intent of the master plan and zoning ordinance to a greater extent than was the case when the power to grant them was vested in the governing body.

Tension between use variances and the zoning ordinance and master plan is less likely in those municipalities that authorize appeals from the grant of use variances to the governing body. *N.J.S.A.* 40:55D–17(a).

As noted by Judge Michels in his dissenting opinion in *Preakness Hill v. Wayne Tp. Council,* 221 *N.J.Super.* 175, 186–187 (App.Div.1987), rev'd 113 *N.J.* 370 (1988):

Finally, the *Rickel* court's construction of the statute is consistent with the clear policy of our State to allow new nonconforming uses 'only sparingly and with great caution.' *Kohl v. Mayor and Council of Fair Lawn,* 50 *N.J.* 268, 275 (1967). The granting of variances for nonconforming uses, implicating State policy considerations, is properly left to the State's elected officials, *i.e.,* the governing body.

The evolution of the statutory scheme reflects a legislative desire to expand the power of the board of adjustment to grant or deny use variances but to retain the right of the elected officials, the governing body, to review the grant of a use variance, *de novo.* However, the decision to review has now been made optional with the governing body. This latest step in the evolution creates the issue presented by this case.

In *Tucci,* the Law Division concluded that the governing body had to pass a new ordinance reflecting its decision to review the grant of use variances after the 1984 amendment to *N.J.S.A.* 40:55D–17a, notwithstanding that the statute contains no such requirement and that a municipality may have previously adopted an ordinance permitting such appeals. The statute simply contains the language, "if so permitted by ordinance." It does not require that a new ordinance be adopted after the amendment. If the ordinance already contains language permitting such appeals, even if not necessary at the time the ordinance was adopted, and for whatever reason it may have been included in the ordinance, nonetheless such appeals are "so permitted by ordinance."

At the time Moonachie adopted its ordinance in 1981, *N.J.S.A.* 40:55D–17a provided that any interested party desiring to appeal the grant of a use variance was *required* to appeal to the governing body, whether the governing body wanted to hear such appeals or not. Any other final decision of a board of

adjustment or planning board, on any class of applications for development, were appealable to the mayor and council "if so permitted by ordinance." Thus, when Moonachie indicated its desire that grants of variances by the board of adjustment be appealed to the governing body in the first instance, they included appeals from use variances even though at that time these were statutorily required to be appealed to the governing body. The 1984 amendment to *N.J.S.A.* 40:55D–17a simply rendered the portion of the previously enacted ordinance permitting appeals from other final decisions of the board of adjustment or planning board on any class of application for development other than for a use variance under *N.J.S.A.* 40:55D–70d superfluous and no longer effective.

In our judgment, the remaining language of the ordinance requiring appeals from the grant of use variances to be made to the governing body remained intact because such appeals are still "permitted by ordinance." "Ordinarily if a part of [an ordinance] is adjudged invalid and the remainder can stand independently without conflict with the overall basic purpose of the [governing body] it will be allowed to do so." *N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners,* 48 *N.J.* 581 (1967). If the ordinance contains a severability clause there is a rebuttable presumption of severability. *Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200, 237 (1978).[7] We therefore conclude that *Tucci v. Borough of Moonachie,* was incorrectly decided, and it is therefore overruled.

The *Tucci* judge correctly noted that the 1984 amendment to *N.J.S.A.* 40:55D–17a requires the exercise of an option by the governing body as to whether it will hear appeals from the grant of a variance. However, we disagree with the *Tucci* court in its conclusion that this requires an affirmative act in the form of the passage of a new ordinance. If the municipali-

---

[7] We do not know whether the Moonachie ordinance has a severability clause.

ty already has an ordinance permitting such appeals from the grant of use variances, the affirmative act to be accomplished would be the passage of an ordinance deleting the language providing for such an appeal to the governing body, whereas in those municipalities that had not provided for such appeals at all, the affirmative act would be the adoption of an ordinance permitting such appeals, if the governing body wanted to review variances granted pursuant to *N.J.S.A.* 40:55D–70d.

If the language of the Fort Lee ordinance provided for appeals to the governing body from grants of use variances by the Board of Adjustment when it was adopted in 1977, it granted the same right to an interested party to appeal to the governing body as was already granted by the Legislature by *N.J.S.A.* 40:55D–17a. In other words, the interested party already had that right even if it had not been provided in the Fort Lee ordinance. Contrary to the Moonachie ordinance, however, the Mayor and Council in Fort Lee apparently did not opt to entertain appeals from any other final decisions of the Board of Adjustment or Planning Board on any other class of application for development.

Furthermore, when the Municipal Land Use Law was changed in 1984 to eliminate appeals to the Mayor and Council from the grant of use variances unless such appeals were permitted by ordinance, the Mayor and Council did consider the requirements of the amendment to *N.J.S.A.* 40:55D–17a. At that time, according to the minutes of the July 12, 1984 meeting of the Mayor and Council, when they were advised that "the State Land Use Act had been amended to permit municipalities to direct appeals to the courts rather than hearing them themselves," the Mayor and Council agreed that the "present ordinance is satisfactory." This, of course, reflected the affirmative act which the *Tucci* court concluded was necessary. In our judgment, the fact that the ordinance was not amended to eliminate the right of appeal to the Mayor and Council also reflected an affirmative act, and therefore such appeals are permitted by the ordinance.

If, after the 1984 amendment to *N.J.S.A.* 40:55D–17a, a municipality was required to pass an ordinance which permits appeals to the governing body from grants of use variances by boards of adjustment when that municipality already has an ordinance permitting such appeals, what would the new ordinance provide that the present ordinance does not already provide? On the remand herein ordered the trial judge is directed to determine exactly what the Fort Lee ordinance provided as to such appeals at the time of the appeal to the Mayor and Council in this case.

The trial judge did not address any of the other issues raised by the parties because of his decision that the Mayor and Council lacked jurisdiction to hear the appeal from the use variance approved by the Board. Since we conclude the Mayor and Council may have had jurisdiction, depending upon the provisions of the ordinance, we address one other issue as guidance to the trial judge. See *R.* 2:10–5.

The governing body of Fort Lee consists of a mayor and six councilmen. On March 7, 1988 when this matter was heard by the Mayor and Council, Councilwoman Lofaro was absent so that only five of the councilmen, together with the Mayor, were present. The resolution denying Grant's application was passed by the vote of three of the councilmen and the Mayor, with two of the councilmen voting against it. The Mayor cast a vote upon the advice of the borough attorney that, pursuant to *N.J.S.A.* 40A:9–132, he had the right to vote since four affirmative votes were necessary to take action in the matter.

It was Grant's position below that the vote of the Mayor in favor of the resolution denying the use variance was invalid.[8]

---

[8]The brief submitted on behalf of Grant does not repeat this argument on appeal, notwithstanding that the objectors raised this issue in their brief. We recognize that the objectors are no longer parties to this appeal, *see* footnotes 1 and 2, and further recognize that the trial judge did not rule upon this issue. However, this issue is still in the case and must be addressed. We do not know why Grant did not respond to this issue which was advanced in the objectors'

It is unnecessary for us to resolve the issue as to the validity of the Mayor's vote since we conclude that the vote by the three councilmen in favor of the resolution was sufficient to reject Grant's application for a use variance.

The language of *N.J.S.A.* 40:55D–17e, as amended in 1984, requires:

e. The affirmative vote of a majority of the full authorized membership of the governing body shall be necessary to reverse, remand, or affirm with or without conditions any final action of the board of adjustment.

We disagree with the opinion of the borough attorney that four votes were necessary to reverse the decision of the Board. The conflict which had existed in the Appellate Division on this question has been resolved by our Supreme Court. In *Com. for a Rickel Altern. v. City of Linden,* 214 *N.J.Super.* 631 (App. Div.1987), one part of the Appellate Division decided that the review by the mayor and council of a board of adjustment's grant of a use variance is a *de novo* review of the application and not limited to a review for abuse of discretion. *Id.* at 635. Thus, the burden of proof is on the applicant to convince the governing body of its entitlement to the variance. *Id.* at 636. A tie vote of the governing body reverses the grant of the use variance by the board of adjustment. *Ibid.* However, in *Preakness Hill v. Wayne Tp. Council, supra,* 221 *N.J.Super.* 175, another part of the Appellate Division, with one judge dissenting,[9] concluded that the decision of the board of adjustment was presumed to be correct and that an enhanced majority vote by the mayor and council was necessary to reverse the action of the board of adjustment. In that case, the vote on a resolution to reverse the board of adjustment was four yes,

---

brief. We have denied Grant's application to file a supplemental brief addressing this issue. However, on the remand counsel may address to the trial judge any argument as to why our determination of this issue should not apply in this case.

[9]Judge Michels dissented because he concluded that the decision in *Com. for a Rickel Altern.* was correct.

three no, and two absent. 221 *N.J.Super.* at 177. It was argued that under *N.J.S.A.* 40:55D–17e an enhanced majority vote was required, *i.e.*, the affirmative vote of a majority of the full authorized membership. Since the full authorized membership was nine and there were only four affirmative votes, it was concluded that the motion to reverse was not carried by an enhanced majority. Thus the variance granted by the board of adjustment was affirmed. The Supreme Court affirmed the decision in *Com. for a Rickel Altern. v. City of Linden,* at 111 *N.J.* 192 (1988), and reversed the decision in *Preakness Hill v. Wayne Tp. Council,* at 113 *N.J.* 370 (1988), based upon the decision in *Com. for a Rickel Altern. v. City of Linden.*

Simply stated, the reasoning in the *Rickel* case was that the hearing before the governing body is *de novo* on the record, and that the language added to *N.J.S.A.* 40:55D–17e by the 1984 amendment, "or affirm with or without conditions," [10] means that the Legislature intended in the event of an appeal to the governing body that the burden of proving the right to a use variance remains upon the applicant notwithstanding that the board of adjustment had approved the variance. Thus, a tie vote by the governing body means the applicant did not meet that burden and constitutes a reversal of the grant by the board of adjustment.

In the instant case, the vote was three in favor of denial of the variance and two in favor of granting the variance. Even if we were to assume that the absent council person would vote to grant the variance, it still would be denied because of the tie vote and constitute a reversal of the grant by the board of adjustment.

---

[10] We note that the language of Section 17–4.2e of the Fort Lee ordinance mirrors *N.J.S.A.* 40:55D–17e before the 1984 amendment and therefore is no longer effective since the statute as amended and interpreted in *Rickel* controls. Similarly, to the extent that Section 17–4.2c is inconsistent with *N.J.S.A.* 40:55D–17c, the statutory provision prevails.

Reversed and remanded to the trial judge for a determination as to the actual language of the Fort Lee ordinance of which the public had notice concerning appeals to the Mayor and Council from decisions of the Board of Adjustment granting variances pursuant to *N.J.S.A.* 40:55D–70d. If the trial judge concludes that Section 17–4.2 was advertised after passage with the incorrect reference to subsection 17–2.7d and was at no time corrected by amendment, then the ordinance does not provide for such appeals, and the Mayor and Council were without jurisdiction to hear the objectors' appeal. On the other hand, if the trial judge concludes that the language of the original ordinance, or as subsequently amended, provides that any interested party may appeal to the governing body any final decision of the Board of Adjustment granting a variance pursuant to subsection 17–2.10d, which refers to use variances, then the Mayor and Council had jurisdiction to hear the appeal *de novo* and, by the vote cast, Grant's application for a variance was denied and the decision of the Board granting the use variance therefore reversed. *Com. for a Rickel Altern. v. City of Linden.* We do not retain jurisdiction.